IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

2/10/2025

LAURA A. AUSTIN, CLERK
BY: z/c. Kemp
DEPUTY CLERK

TOIVANIA E. GILL,                      )
                                       )
                Plaintiff,             )        Case No. 7:24-cv-00152
                                       )
v.                                     )        **MEMORANDUM OPINION**
                                       )
FOOD LION, LLC &                       )        By:    Hon. Thomas T. Cullen
AHOLD DELHAIZE,                        )               United States District Judge
                                       )
                Defendants.            )

---

Plaintiff Toivania E. Gill ("Gill") brings this action against Food Lion, LLC ("Food Lion") and Ahold Delhaize (collectively, "Defendants"), stemming from incidents where she alleges employees at her local Food Lion engaged in a campaign of harassment and misconduct against her. Gill filed an Amended Complaint (ECF No. 18), and this matter is now before the court on Defendants' renewed motions to dismiss (ECF Nos. 21, 24). For the reasons explained below, the court will grant Defendants' motions to dismiss and dismiss Gill's Amended Complaint.

## I.    BACKGROUND

The facts below are taken from Gill's Amended Complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences are drawn in Gill's favor. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

## A.    Factual Background[1]

Gill has been a loyal patron of the Food Lion grocery store located at 2110 Bennington Ave SE, Roanoke, Virginia, for some time. (Am. Compl. at 2 [ECF No. 18].) (*Id.*) By and large, she was a happy customer. But beginning on or around February 1, 2022, her experience at the store took a turn for the worse. (*Id.*) Around that time, Gill alleges that she was subjected to "consistent and repeated misconduct blatantly and proudly displayed" by employees at the Food Lion. (*Id.*) Her Amended Complaint outlines numerous alleged incidents of bad behavior perpetrated by unnamed Food Lion employees.

Gill alleges that in February 2022, employees started to follow her through the store to harass her as she shopped. (*Id.* at 3). In one incident, an employee brought a friend into the store to follow, harass, and record Gill and her son. (*Id.* at 5). The same employee apparently followed Gill in other stores as well, to the point where her son became paranoid and "jumpy" whenever approached in a store. (*Id.*)

At other times between February 2022 and April 2023, Gill and her children would make a shopping list at home before going to the store. (*Id.* at 2.) But once she got to the store, she claims the employees "somehow" knew which specific items she intended to buy, and they

---

[1] The court notes that Gill's factual allegations are rambling and unstructured, and its recitation of Gill's allegations is also necessarily unfocused. The court is often unable to discern the nature and motivation of the conduct that Gill describes, as well as under what theory of discrimination it falls. This is evidenced by Gill's summary of the various causes of action she is asserting: "Intentional Disability/Perceived Disability Discrimination and Harassment and the emotional distress associated thereof in violation of the VA Human Rights Act and Title III of the Americans with Disabilities Act;" "Gender Discrimination and Harassment and the emotional distress associated thereof in violation of the VA Human Rights Act;" "Racial Discrimination and Harassment and the emotional distress associated thereof in violation of the Title II Civil Rights Act of 1964 and the VA Human Rights Act;" "Sex Harassment and the emotional distress associated thereof in violation of [the] VA Human Rights Act;" and "Personal injuries including: defamation, slander, invasion of privacy, negligence, breach of implied contract, and intentional infliction of emotional distress." (Am. Compl. at 2.)

would be waiting for her once she approached those products. (*Id.* at 3.) In one instance, two employees were having a conversation next to the salad that one of Gill's children had requested. (*Id.*) According to Gill, the two male employees began talking about people who had the same mental disabilities as her, stating that those people were "crazy."[2] (*Id.*) Those same employees allegedly also made disparaging comments about her gender identity, "snickering" at her. (*Id.*) In other instances, she was constantly followed around the store by employees who mumbled slurs and hateful comments such as "AIDS," "herpes," "tranny," or "prostitute" under their breath. (*Id.*) Gill asserts these comments were intentional and especially harmful because they were often made within earshot of her 10-year-old child, who was so distressed by the comments that he fell into a state of depression and began to fear members of the "caucasian race." (*Id.*) Gill maintains that these instances are emblematic of a long pattern of discriminatory harassment by the Food Lion employees.

In addition to store employees making hurtful comments to her face, Gill also claims that store employees generated and spread ugly rumors behind her back. (*Id.*) Among those was a rumor that she carried various sexually transmitted diseases and intended to "infect" others while she was in the store. (*Id.*) These rumors apparently caused Gill such severe distress that she would sometimes go without food rather than go to the store to face further harassment and lies. (*Id.* at 3–4.) She also claims that the employees spread rumors that she was a racist. (*Id.* at 5.) Gill claims the stigma stemming from lies that she is racist or has a disease has been detrimental to her public image, business, and character. (*Id.*)

---

[2] Gill notes that she has been diagnosed with post-traumatic stress disorder ("PTSD"), anxiety disorder, and clinical major depression disorder. (Am. Compl. at 2.)

Beyond spreading rumors that she is a racist, Gill alleges that Food Lion's employees perpetrated their own campaign of racial discrimination against her. (*See id.* at 4.) According to Gill, employees would use her receipts and video surveillance to track the products she purchased, and then would remove those items from the shelves to prevent her from purchasing them. (*Id.*) She alleges that they did this "because of [her] African American race," and that other black customers were also denied these products while "non-African Americans" were able to buy them. (*Id.*)

In addition to using her receipts to track and harass her, Gill alleges that employees reprinted her receipts on numerous occasions after she made purchases. (*Id.* at 4.) The employees would then post these receipts online to "impersonate" her and use her likeness "for advertising" purposes without her consent. (*Id.*)

With all of this going on, Gill further alleges that Food Lion employees subjected her to several instances of sexual harassment. One day, as she was placing bagged items into her cart, Gill claims that a cashier bent over to scan a case of water causing his face to end up very close to her genitals. (*Id.* at 6.) Additionally, white male employees started another rumor that Gill had asked to perform sexual favors for them as she shopped. (*Id.*) She claims that, on a regular basis, other employees would notify one particular male employee when Gill entered the store who would then come out "for the sole purpose of harassing her." (*Id.*) He and other male employees would frequently and deliberately block her path, mumble as they walked by, or make loud noises by slamming boxes on the ground, which would make her turn around and appear to be talking or interacting with them, making it look like she was interested in them or was soliciting sexual favors. (*Id.*)

- 4 -

Gill contends that the various rumors spread about her are false and baseless and, in fact, insists that she has never talked to any store employees aside from a manager. (*See id.* at 3, 6.) Despite this, Gill alleges the rumors, discrimination, and harassment by Food Lion's employees was intentional and widespread, and that some employees even recruited their family and friends to participate in it. (*Id.* at 8.) Because of these constant attacks, Gill and her children have suffered emotionally and are afraid of being continuously targeted within the store or the broader community. (*Id.*) As a result, Gill claims that she has had to resort to using a costly delivery service for her groceries. (*Id.*)

After suffering this ongoing harassment by Food Lion employees, Gill sent a demand and preservation of evidence letter to Food Lion in November 2022. (*Id.* at 6.) She did not receive a response to her first letter, so she sent a revised follow-up letter in April 2023,[3] before finally receiving a response on May 25, 2023. (*Id.*) Gill alleges that her claims were not taken seriously after her first letter, and the employees retaliated against her, intensifying the harassment, and even opened a sexual harassment complaint against *her*. (*Id.* at 7.) Gill claims that these more severe incidents could have been prevented if Food Lion had handled her complaints "properly and with integrity." (*Id.*)

In a final twist, Gill states that after she sent her first preservation letter, her transaction history on her online Food Lion rewards account was wiped clean. (*Id.*) Around that time, employees also allegedly deleted video surveillance footage that would have supported her

---

[3] Gill says she sent a second letter in April, but the second demand and preservation letter attached is dated May 8, 2023. (*See* Am. Compl. Ex. 1.)

claims.[4] (*Id.*) Gill asserts that this was all intentionally done to deprive her of information she could use to support her claims. (*Id.*)

### B.    Procedural History

Gill originally filed suit against Food Lion on February 27, 2024. (ECF No. 1.) Food Lion responded on March 25, 2024, by moving to dismiss her complaint. (ECF No. 4.) On April 18, Gill filed a response in opposition to Food Lion's motion and sought leave to file an amended complaint. (ECF Nos. 12, 13.) The court granted her motion to amend and took Food Lion's pending motion to dismiss under advisement. (ECF No. 15.) On May 16, Gill filed her Amended Complaint. (ECF No. 18.) Because Gill filed an amended complaint, the court denied Food Lion's original motion to dismiss as moot. (ECF No. 31.)

The Amended Complaint is virtually identical to the initial complaint but adds another party—Ahold Delhaize—to the suit.[5] In the Amended Complaint, Gill asserts myriad claims under Title II of the Civil Rights Act of 1964, Title III of the Americans with Disabilities Act ("ADA"), the Virginia Human Rights Act ("VHRA"), and Virginia statutory and common law. (*Id.* at 2, 8.) Collectively, she seeks $45,350,000 in damages. (*Id.*)

On May 30, Food Lion again moved to dismiss Gill's Amended Complaint for failure to state a claim (ECF Nos. 21, 22), and on June 20, Ahold Delhaize did the same, making substantially similar arguments to Food Lion (ECF Nos. 24, 25). Gill did not respond to Food

---

[4] Gill undermines her own accusation by caveating that statement with speculation; she later says that, "[c]onsidering that the employees discriminating and harassing me remain employed it is safe to say that the video footage was destroyed . . ." (Am. Compl. at 7.)

[5] The court understands this defendant to be the parent company of Food Lion, but the Amended Complaint presents no facts to identify or otherwise explain the relationship of this party to the suit.

Lion's motion to dismiss, but she did file an opposition to Ahold Delhaize (ECF No. 29), to which Ahold Delhaize filed a reply (ECF No. 30), making these motions ripe for disposition.

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8. A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

Gill is proceeding *pro se*, so her amended "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (cleaned up). But a complaint still must state a right to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Moreover, "this liberal construction does not require the court to ignore clear defects in pleading or to conjure up questions never squarely presented in the complaint." *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 760 (M.D.N.C. 2018) (internal quotation omitted). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (internal quotation and emphasis omitted).

### III.    ANALYSIS

Gill asserts a laundry list of purported federal and state law claims. While Gill's complaint alleges troubling conduct by unknown Food Lion employees, the court agrees with Defendants that nothing in her pleading states a claim on which relief could be granted.

As a preliminary matter, Gill argued that Defendants' motions to dismiss should be denied because the 90-day window to serve her Amended Complaint and summons had not yet expired. (*See* ECF No. 29 at 1.) This argument is both moot and without legal merit. Ahold Delhaize admits that it has been properly served with the summons and the Amended Complaint, to which it has timely filed a motion to dismiss. (Ahold Delhaize's Reply at 2 [ECF No. 30].) Further, nothing in the Federal Rules of Civil Procedure requires that a defendant wait for the remaining service window to expire before responding to a pleading. To the contrary, defendants are required to file an answer or motion within a set period of time after service, regardless of whether any time remains on a plaintiff's service clock. *See* Fed. R. Civ. P. 12(a)(1). Therefore, Gill's response has no bearing on this court's decision and the court will rule on the merits of Defendants' motions to dismiss.

### A.    Claims Against Ahold Delhaize

To survive a motion to dismiss, a plaintiff must assert facts that allow the court to infer that the defendant is plausibly liable to the plaintiff under the asserted claims. *See Iqbal*, 556 U.S. at 678. Rule 8 requires a plaintiff to include in her complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In her Amended Complaint, Gill fails to allege *any* facts against Ahold Delhaize. The name of this defendant appears in the caption and in Gill's prayer for relief, but the court sees no other

mention of Ahold Delhaize and has no other information about that party. (*See* Am. Compl. at 8 ("As a result of the misconduct on Food Lion LLC and Ahold Delhaize behalf [*sic*] I seek the following relief . . . .").) Without any other—even basic—facts asserted about Ahold Delhaize or its role as a party to the suit, the court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions . . . will not do.") (cleaned up). Accordingly, Ahold Delhaize's motion to dismiss will be granted, and the court will assess the remaining claims as against Food Lion.

### B.    Federal Claims

Gill's Amended Complaint alleges a variety of claims under two federal causes of action: (1) Title II of the Civil Rights Act of 1964 and (2) Title III of the ADA. Food Lion asserts that her complaint fails to state a claim under either statute. The court agrees with Food Lion.

### 1.    Title II of the Civil Rights Act

Gill's Amended Complaint alleges that she is entitled to relief for "[r]acial discrimination and [h]arassment and the emotional distress associated thereof in violation of Title II of the Civil Rights Act." (Am. Compl. at 2.) That statute provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). As relevant here, a public accommodation includes "any . . . facility principally engaged in selling food for consumption on the premises, including, but

not limited to, any such facility located on the premises of any retail establishment." *Id.* § 2000a(b)(2). It also includes "any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment." *Id.* § 2000a(b)(4).

Food Lion argues that grocery stores are not "places of accommodation" under the statute, so any claim derived from § 2000a necessarily fails. (Food Lion Mem. Supp. Mot. Dismiss at 11–12 [ECF No. 22].) That is generally true. A grocery store can, however, fit within the statute's definition of a public accommodation if it includes a dining area inside of the store. *See, e.g.*, *Davis v. Food Lion, LLC*, No. 4:23cv147, 2024 WL 3653063, at *3–4 (E.D. Va. July 23, 2024); *Hodge v. Giant of Md. LLC*, No. PWG-21-554, 2022 WL 4080317, at *4 (D. Md. Sept. 6, 2022); *McArthur v. C-Town Super Mkt.*, No. 3:21-cv-972, 2022 WL 2981573, at *3 (D. Conn. July 28, 2022) (collecting cases). But Gill's complaint does not allege anything to that effect. *Cf. Hodge*, 2022 WL 4080317, at *4 (finding a plaintiff pleaded that a grocery store was a public accommodation under § 2000a because he demonstrated that the store had a food bar and dining area). Instead, Gill "principally alleges facts suggesting that [Food Lion] is a supermarket selling food on a retail basis for off-premises consumption." *McArthur*, 2022 WL 2981573, at *3; *see Davis*, 2024 WL 3653063, at *4 (concluding that a different Food Lion location is not a public accommodation under § 2000a because "[a]lthough Plaintiff alleges that Defendant is a grocery store that sells food items, there is nothing in Plaintiff's Complaint to suggest that Defendant's establishment contains a restaurant or other dining facility that is principally engaged in selling food for on-site consumption"). Because Food Lion, as pleaded,

is not a covered establishment under Title II of the Civil Rights Act, any claim Gill alleges under this statute fails.

### 2.      Title III of the ADA

Gill also brings an "Intentional Disability/Perceived Disability Discrimination and Harassment" claim under Title III of the ADA. (Am. Compl. at 2.) Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). Unlike Title II of the Civil Rights Act, however, Title III of the ADA expressly includes a grocery store in its definition of public accommodation. *See* 42 U.S.C. § 12181(7)(E). Nevertheless, Title III is improperly invoked here because "[i]t provides a private right of action for injunctive relief but no right of action for monetary relief." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 638 (4th Cir. 2016).  Gill does not request equitable relief in her prayer for relief, nor does she assert anything in her Amended Complaint that could be construed as a request for Food Lion to accommodate her disability. Because Title III does not create a right of action in the manner Gill pleads, her ADA claim must be dismissed. *See Edwards v. Sentara Hosps.*, No. 2:21-cv-105, 2022 WL 19262, at *4–5 (E.D. Va. Jan. 3, 2022) (dismissing plaintiff's ADA claim that only sought damages); *Zhang v. Ross Store Inc.*, No. 1:10-cv-1328, 2011 WL 8129471, at *4 (E.D. Va. May 17, 2011) (same).

C.    **Virginia Law Claims**

1.    **VHRA Claims**

Gill asserts four claims based on alleged violations of the VHRA: "Intentional Disability/Perceived Disability Discrimination and Harassment," "Gender Discrimination and Harassment," "Racial Discrimination and Harassment," and "Sex Harassment." (Am. Compl. at 2.) As relevant here, the VHRA proscribes discrimination by an employee of a place of public accommodation "on the basis of race, . . . sex, . . . sexual orientation, gender identity, . . . [or] disability." Va. Code Ann. § 2.2-3904(B). Crucially, "private citizens may only sue under the VHRA once they have been provided a notice of their right to file a civil action pursuant to § 2.2-3907." *Moss v. Saja Rest. Grp. LLC*, 670 F. Supp. 3d 349, 367 (W.D. Va. 2023) (cleaned up); *see* Va. Code Ann. § 2.2-3908(A). A prospective plaintiff must receive a notice of her right to file from the Virginia Office of Civil Rights ("VOCR") before any civil action can be filed. § 2.2-3908(A).  In this case, Food Lion argues that because they did not receive notice of any charge filed by Gill, she has failed to follow the proper procedural requirements, so her VHRA claims must be dismissed.[6] (Food Lion Mem. Supp. Mot. Dismiss at 7.) In her Amended Complaint, Gill makes no mention or assertion that she properly received notice of her right to file under the VHRA, let alone that she filed any sort of complaint with VOCR. Therefore, Gill's failure to request and receive a right-to-sue notification from VOCR is fatal, and the court must grant Defendants' motions to dismiss on these claims.

---

[6] The court has previously encountered the question of whether the exhaustion of administrative remedies under the VHRA is a jurisdictional prerequisite to suit or a mandatory claims-processing rule that the court must enforce if raised. *See Hairston v. Nilit Am., Inc.*, No. 4:23-cv-00011, 2023 WL 8011089, at *3 (W.D. Va. Nov. 20, 2023). The court did not definitively answer the question then, and it need not do so here because Food Lion has affirmatively raised the issue for the court to consider.

### 2.    Personal Injury and Tort Claims

Gill's final cluster of claims consist of various tort claims arising under Virginia law. Many of these claims stem from Food Lion employees' individual behavior. Because Gill only brings this action against Food Lion and not any individual employees, those tort claims, if sufficiently pleaded, may survive under a *respondeat superior* theory of vicarious liability.

Under a theory of *respondeat superior*, "an employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 22 (Va. 2019) (internal quotation omitted).[7] If a complaint plausibly alleges an employer-employee relationship, it creates a rebuttable presumption that an employee was acting within their scope of employment. *See Parker v. Carilion Clinic*, 819 S.E.2d 809, 817–18 (Va. 2018). But "[a] plaintiff can plead herself out of court by affirmatively alleging facts that rebut the presumption implied in law." *Id.* at 822.

More specifically, vicarious liability may be imposed when an employee committed a tortious act while actively engaged in a "normal function" of his job-related service. *Our Lady of Peace*, 832 S.E.2d at 23. There is no liability if the tortious act did not "arise out of the very transaction, or service or task, that the employee was being paid to perform." *Parker*, 819 S.E.2d at 819 (internal quotation omitted); *id.* at 820 ("[T]he tortious act or transaction occurred *while* the employee was in fact performing a *specific job-related service* for the employer, and, but for the employee's wrongdoing, the service would otherwise have been within the

---

[7] This theory applies to negligence as well as intentional torts. *Roughton Pontiac Corp. v. Alston*, 372 S.E.2d 147, 156 (Va. 1988); *see also Lokhova v. Halper*, 995 F.3d 134, 146 (4th Cir. 2021) (applying *respondeat superior* to defamation claim).

authorized scope of his employment."). "Respondeat superior liability cannot be established merely by showing that the employee was 'on the clock,' using the employer's property, or on the employer's premises at the time of the alleged tortious acts or omissions." *Id.* at 821.

An employee's motive is also an important factor. Vicarious liability "cannot extend to an employer for an unauthorized tortious act by an employee arising *wholly* from some external, independent, and personal motive on the part of the employee to do the act upon his own account." *Our Lady of Peace*, 832 S.E.2d at 845 (cleaned up); *see also Parker*, 819 S.E.2d at 822 ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve *any* purpose of the employer . . . ." (citing Restatement (Third) of Agency § 7.07(2) (2006))). An employee's motive alone is not determinative, but where a bad motive is combined with a "deviation from the employer's business" that is "marked and unusual" as opposed to "slight," the two together can be determinative *Our Lady of Peace*, 832 S.E.2d at 846 (internal quotation omitted).

With the principle of *respondeat superior* in mind, the court will evaluate each of Gill's individual claims in turn.

### i.    Invasion of Privacy

Gill first attempts to raise a claim for invasion of privacy. Virginia, however, does not recognize a common law cause of action for invasion of privacy. *See, e.g.*, *Bellotte v. Edwards*, 388 F. App'x 334, 339 (4th Cir. 2010). There are only limited statutory rights related to computer crimes and the unauthorized use of a person's name or picture for "advertising purposes or for the purposes of trade." Va. Code Ann. § 8.01-40.  On this claim, Gill alleges that Food Lion employees reprinted her receipts and posted them online to "impersonate [her]

- 14 -

and use [her] likeness for advertising purposes without [her] consent." (Am. Compl. at 4.) Gill's allegation appears to merely track the statutory language and is devoid of any other facts besides conclusory statements. Even entertaining that Food Lion used her name without her consent, Gill's Amended Complaint gives no color to what "advertising purposes" are alleged or how her name was used. Therefore, because no sufficient factual basis is alleged and the allegations amount to nothing more than a bare recitation of the elements of her cause of action, *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), the court will dismiss Gill's invasion-of-privacy claim.

### ii.    Defamation and Slander

Next, Gill brings a claim of defamation to vindicate the alleged harm to her character and unspecified business that has resulted from alleged malicious rumors spread about her. As an initial matter, Food Lion argues that Gill's defamation action may be time-barred. (*See* Food Lion Mem. Supp. Mot. Dismiss at 12–13.) Virginia law is clear that "[e]very action for injury resulting from libel, slander, insulting words, or defamation shall be brought within one year after the cause of action accrues." Va. Code Ann. § 8.01-247.1. And "[a]ny cause of action that a plaintiff has for defamation accrues on the date that the defamatory acts occurred." *Lokhova v. Halper*, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020) (citing *Askew v. Collins*, 722 S.E.2d 249, 252 (Va. 2012)). Food Lion notes, correctly, that Gill's Amended Complaint only alleges that misconduct generally started on February 1, 2022—two years before she filed this lawsuit. Gill makes no other claim as to when, specifically, any defamatory statements were made. But because it is unclear which, if any, of the defamatory statements would be time-barred or possibly subject to the republication doctrine, and because the defendant bears the burden of

proving this affirmative defense, the court will not conclude the defamation claim is time-barred or dismiss it on this basis. *See also Cox v. Red Hat, Inc.*, No. 1:23-cv-766, 2024 WL 98162, at *5 n.3 (E.D. Va. Jan. 9, 2024) (declining to find statement is time-barred where it is unclear on the face of the amended complaint when the statement was made).

That does not mean that Gill's defamation claim survives. In Virginia, a plaintiff claiming defamation must allege the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). An actionable statement is one that is "both false and defamatory." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015). At the motion to dismiss stage, "a court must accept as false any statement which the Complaint alleges to be false," and the key question becomes "whether the statements referenced in the Complaint are defamatory." *Lokhova v. Halper*, 995 F.3d 134, 145 (4th Cir. 2021) (internal quotation omitted). "Defamatory words are those tending so to harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *Schaecher*, 772 S.E.2d at 594 (cleaned up). The "sting" associated with the required level of harm is "language that tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon [her], or which tends to hold [her] up to scorn ridicule, or contempt, or which is calculated to render [her] infamous, odious, or ridiculous." *Lokhova*, 995 F.3d at 145 (internal quotation omitted). A statement can be actionable "per se" if it "impute[s] that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society." *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006). Finally, "it

must be apparent on the face of the pleading that the alleged defamatory statements are of

and concerning the plaintiff." *Lokhova*, 995 F.3d at 145 (internal quotation omitted).

Gill's Amended Complaint does not have enough basic factual support to plausibly

establish a defamation claim. For one, although not affirmatively time-barred, Gill fails to

adequately identify when the alleged statements were made. She merely alleges that at some

time (presumably after February 1, 2022) "it was rumored and spread around to the entire staff

that [she] carr[ied] infectious diseases" and that at some point in time "employees also spread

rumors" that she was racist. (Am. Compl. at 3, 5.) Further, Gill's Amended Complaint does

not specify who the unnamed employees spread the alleged rumors to, and the court can only

guess as to where, when, and to whom such statements were made. *See McCray v. Ardelle Assocs.*

*Inc.*, No. 4:14cv58, 2015 WL 3886318, at *6 (E.D. Va. June 23, 2015) (finding that an allegation

that statements were made "to third parties" without identifying to whom in particular the

statements were made was insufficient to state a claim for defamation). While a claim "need

not be set out in detail, it must have some factual basis," *Skillstorm, Inc. v. Electronic Data Sys.,*

*LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (citing *Twombly*, 550 U.S. at 556 n.3), for the

court to "infer more than the mere possibility of misconduct" by a defendant, *Iqbal*, 556 U.S.

at 679.[8] Because of these deficiencies, Gill's allegations are "bereft of the factual support

---

[8] In this case, Gill's claim is further frustrated by the fact that she brings claims only against Food Lion, not
individual defendants. To sufficiently plead that Food Lion was vicariously liable for the acts of its employees,
Gill would need to allege facts that not only establish a baseline defamation claim, but that also plausibly allege
such employees were properly acting within their scope of employment (or were even properly in an
employment relationship with Food Lion to trigger the presumption). Alleging only that unnamed employees
spread rumors at various unspecified times or places falls far short of that standard.

necessary to plausibly state a claim for defamation." *Cox*, 2024 WL 98162, at *6.[9] Accordingly, the court will dismiss Gill's defamation claim.

### iii.    Stalking

Gill next claims that Food Lion employees stalked her, following her around the store and other stores. Food Lion argues that this claim must be dismissed because Virginia law does not recognize a private right of action for stalking. (Food Lion Mem. Supp. Mot. Dismiss at 12.) That is no longer true. As of 2001, Virginia recognizes that a "victim has a civil cause of action against an individual who has engaged in [stalking]." Va. Code Ann. § 8.01-42.3(A). But even though Gill's claim is recognized, it is not sufficiently pleaded to survive a motion to dismiss. The Supreme Court of Virginia has explained that stalking consists of three elements: "(1) the defendant directed his or her conduct toward the victim on at least two occasions; (2) the defendant intended to cause fear or knew or should have known that his or her conduct would cause fear; and (3) the defendant's conduct cause the victim to experience reasonable fear of death, criminal sexual assault, or bodily injury." *Stephens v. Rose*, 762 S.E.2d 758, 761 (Va. 2014) (internal quotation omitted). Gill asserts vaguely that the employees "surveilled" her and that at least one unnamed employee followed her and her son around the store and other stores, causing her son to be afraid and "jumpy." (Am. Compl. at 5.) Gill does not allege any intent or knowledge on the part of the employees, let alone any fear of death, criminal sexual assault, or bodily injury she suffered as a result. Instead, she accuses Food Lion of

---

[9] The court emphasizes that it makes this determination under the federal pleading standards. Although defamation must be pled with particularity under Virginia law, including with "exact words," *see Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 862 (Va. 2003), a plaintiff bringing a state claim in federal court need not satisfy the state's heightened pleading requirements, and the district court will apply the ordinary standards under Rule 12(b)(6) when analyzing a claim, *see Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005).

engaging in harassment and surveillance for "no apparent reason." (*Id.*) Without any other allegations, Gill has failed to plausibly plead that she can satisfy the elements of stalking as to any Food Lion employee. Therefore, the court will dismiss her stalking claim.

### iv.    Intentional Infliction of Emotional Distress

In Virginia, a party alleging intentional infliction of emotional distress ("IIED") must prove by clear and convincing evidence that "(1) the wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe." *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 632 (W.D. Va. 2015) (citing *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)). "The [Virginia] Supreme Court has stated that even if the conduct was outrageous, liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Hamden v. Denny*, No. 7:20-cv-00236, 2021 WL 1167286, at *8 (W.D. Va. 2021) (internal quotation omitted). Nervousness, sleeplessness, fear, humiliation, or stress absent any objective physical injury or medical attention does not generally rise to an extreme level. *See Marcantonio*, 155 F. Supp. 3d at 632–33 (discussing *Russo*, 400 S.E.2d at 163); *see also Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008) (noting that an IIED claim is "not favored" in Virginia "because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury").

In her Amended Complaint, Gill does not allege any relevant injuries other than what courts have deemed insufficient to state an IIED claim. Gill claims that the intentional discrimination and harassment by employees made her and her children feel unsafe and fearful

of being targeted at the store or elsewhere. (Am. Compl. at 8.) This alone is not enough.

Therefore, the alleged emotional distress suffered does not rise to the "extreme" level required

to plead IIED. Accordingly, the court will dismiss Gill's IIED claim.

## v.    Negligence

Gill's last set of claims alleges misconduct on the part of Food Lion itself, including

negligence based on the handling of her corporate complaints. To establish a traditional claim

of negligence, a plaintiff must allege "the existence of a legal duty, breach of the duty, and

proximate causation resulting in damage." *Dale v. Va. CVS Pharmacy, LLC*, No. 7:19-cv-578,

2021 WL 129820, at *2 (W.D. Va. Jan. 13, 2021) (quoting *Atrium Unit Owners Ass'n v. King*, 585

S.E.2d 545, 548 (Va. 2003)). Gill alleges that Food Lion was negligent by failing to take her

complaints seriously and not handling them "properly and with integrity," which led to further

incidents of increased harassment and discrimination. (Am. Compl. at 7.) The complaints to

which Gill refers are presumptively her "Notice of Intent to Sue/Demand" letters, sent on

November 17, 2022, and May 8, 2023.[10] (*See* ECF 18-1.) But Food Lion does not owe Gill a

legal duty to handle her demand letters "seriously" or "properly." *See Veale v. Norfolk & W.

Ry. Co.*, 139 S.E.2d 797, 799 (Va. 1965) ("[N]egligence is the violation of a legal duty which

one owes to another, and where there is no legal duty there is no actionable negligence."). A

general demand letter prior to litigation is meant to facilitate resolution by the parties, not

force a defendant to pay or take action under a threat of litigation. Even if such a duty existed,

there are no facts alleged that Food Lion breached that duty beyond general allegations that it

---

[10] "Several of the most severe incidents occurred after I sent the first demand letter and could have been avoided." (Am. Compl. at 7.)

did not act "properly" or with "integrity" in Gill's estimation. Therefore, the court cannot conclude that Food Lion could plausibly be liable for negligence. Accordingly, the court will dismiss Gill's negligence claim.

### vi.    Breach of Implied Contract

Gill next attempts to bring a breach of contract claim against Food Lion. In Virginia, the elements for a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (internal quotation omitted). Right out of the gate, Gill admits that she, as a customer, does not "have an official contract with Food Lion." (Am. Compl. at 7.) But she attempts to save her claim by alleging that Food Lion is "required by law" to protect customers and prevent discrimination and harassment and that it failed to do so. (*Id.*)

Pointing to a defendant's general legal obligations does not demonstrate that a contract existed between the two parties. Therefore, the court cannot draw any inference that Food Lion is plausibly liable for a breach of contract. Accordingly, since Gill alleges no other facts to support her breach of contract claim, the court will dismiss this claim.

### vii.    Spoliation of Evidence

Finally, Gill alleges that her online store account was wiped clean and Food Lion employees deleted video footage of their harassment, all constituting an illegal deprivation and destruction of evidence. (*See* Am. Compl. at 7.) Neither federal nor Virginia state law recognizes an independent cause of action for spoliation of evidence. *See Turner v. United States*, 736 F.3d 274, 282 n.5 (4th Cir. 2013); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th

Cir. 2001) ("[W]hile the spoliation of evidence may give rise to court imposed sanctions deriving from its inherent power, the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses."); Va. Code Ann. § 8.01-379.2:1(C) ("Nothing in this section shall be interpreted as creating an independent cause of action for negligent or intentional spoliation of evidence."). Because the spoliation of evidence is not a recognized cause of action, the court must dismiss this claim as well.

## IV.    CONCLUSION

For the foregoing reasons, the court finds that Gill has failed to state any claim upon which relief can be granted against Defendants under Fed. R. Civ. P. 12(b)(6). Accordingly, the court will grant Defendants' motions to dismiss and will dismiss the Amended Complaint.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 10th day of February, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE